# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DANA BRUCE,

      **Plaintiff,**

v.                                      CIV. No. 99-415 JP/DJS

**CYCLONE SECURITY GUARD, INC.
and NEW MEXICO DEPARTMENT OF
LABOR, EMPLOYMENT SECURITY
DIVISION,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On April 12, 1999 Plaintiff Dana Bruce filed a complaint alleging violations of federal statutory law and state common law against Defendant Cyclone Security Guard, Inc. ("Cyclone"). The only claim in the complaint relevant to Defendant New Mexico Department of Labor, Employment Security Division ("ESD") is a petition for a writ of certiorari to review the Department of Labor's denial of unemployment benefits to Plaintiff. On July 22, 1999 ESD filed a Motion to Dismiss (Doc. No. 8) which will be granted.

**I.    Background**

The allegations of the complaint reveal the following scenario: Plaintiff worked for Defendant Cyclone as a security guard. Cyclone provided security services by contract to MCI in Albuquerque, the site to which Cyclone had assigned Plaintiff to work the day/evening shift, part-time. On or about September 15, 1998 Plaintiff was involved in a physical altercation with a female MCI employee. The next day Plaintiff attended a meeting with an MCI department head and two Cyclone supervisors. Plaintiff was told the altercation was "no problem." Complaint ¶

42. Nonetheless, one of the Cyclone supervisors, Mr. Aesoph, suspended Plaintiff as she left the meeting. Plaintiff was told that MCI had exercised its right under the contract with Cyclone to refuse to have her guard the MCI site. On September 17, 1998 Mr. Aesoph told Plaintiff that she would be reassigned to a new job location, and then would be asked to resign in two weeks. Plaintiff said that she could not work at the new job site, which would involve exposure to cold, because of her allergies and bronchitis. She also refused to resign. Cyclone did not give her written notice of her suspension.

On September 23, 1998, after a series of communications from Cyclone telling Plaintiff that she should no longer report to MCI, she was told by Mr. Otero, apparently another supervisor, that she was scheduled to work at a new site on Monday, Tuesday, and Wednesday from 8 a.m. to 4 p.m. Plaintiff told Mr. Otero she could not work those hours and that is why she worked the night shift at MCI. On September 25, 1998, Mr. Shannon, Cyclone owner, repeated the message. Plaintiff told Mr. Shannon she would work the new hours to keep her job, but she could not work in the cold air. Mr. Shannon responded by saying MCI had the right to remove Plaintiff. He also told Plaintiff that she would not have to be in the cold any more than she would "walking to your car picking up groceries." Id. ¶ 56. Plaintiff said she would need to check with her doctor. Mr. Shannon replied that Plaintiff should report for work on Monday and if she was not there, Cyclone would assume she was resigning. Mr. Shannon said Cyclone had an obligation to provide her with work, if they had work, and that Cyclone had only two contract sites in Albuquerque. He added that, "we are not going to go out of our way" and that New Mexico is an at-will state. Id. ¶ 56 (without emphasis). Mr. Shannon told her that she was not suspended and that Plaintiff was mistaken in her belief that she was suspended. Mr. Shannon finished by

2

telling her "to go to work down there at 8:00 and . . . do a good job and look sharp in your uniform and you'll never have a problem." Id.

Plaintiff did not go. Instead, on September 26, 1998, she filed an unemployment claim. On October 13, 1998 the Department of Labor denied her claim. In its Notice of Claim Determination the Department of Labor stated that Plaintiff left her job "due to personal illness or injury" which "does not constitute good cause." Id., Exhibit C. The Notice of Claim Determination indicated that it would become a final determination unless appealed within fifteen calendar days.

On October 27, 1998 Plaintiff appealed to the Department of Labor Appeals Tribunal. On December 4, 1998 the Appeals Tribunal affirmed the decision of the Claims Examiner. The Appeals Bureau found that Plaintiff did not ask for accommodation and did not even try to work at the reassigned location. The Appeals Bureau affirmed that Plaintiff's actions did not amount to good cause. The Decision of Appeals Bureau indicated that Plaintiff had another fifteen days to appeal further. Within fifteen days, Plaintiff appealed to the Cabinet Secretary.

On December 30, 1998 the Cabinet Secretary affirmed the Appeals Tribunal, without comment on the findings of fact or conclusions of the Claims Examiner or the Appeals Tribunal. The Decision of the Secretary contained the following:

> This is the final decision of the Department. If you disagree with this decision you may file an appeal to the district court where you reside in New Mexico. The appeal must be filed within 30 days from the date of this decision. If you wish to file a court appeal, you should immediately contact your private attorney or a legal services agency for assistance. Appeals are governed by NMSA 1978, § 51-1-8 (M) and (N) (1998), and Rule 1-077 NMRA 1996.
>
> UNEMPLOYED CLAIMANTS WISHING TO APPEAL TO DISTRICT COURT SHOULD CONTINUE TO FILE BIWEEKLY CERTIFICATIONS PENDING THE

COURT'S DECISION.

Id., Exhibit A. Notwithstanding these provisions Plaintiff "did not understand that she had a right to 'appeal' from the decision of the Secretary." Id. ¶ 25. Sometime in the days or weeks that followed, employees from the Department of Labor told her that she no longer needed to file bi-weekly certifications.[1] "Plaintiff did not retain counsel . . . until after the deadline to file a Petition for Writ of Certiorari" had elapsed. Id. ¶ 26.

As early as February 6, 1998 Plaintiff indicated to the Department of Labor her intent to file "a further Appeal." Id. ¶ 27. Following a dispute over Plaintiff's purported entitlement to her Department of Labor file and audio tapes from her hearing, culminating in Defendant ESD's refusal to provide the requested materials, Plaintiff on April 12, 1999 filed this action.

In her complaint Plaintiff alleged that Defendant Cyclone violated Title VII's prohibition on gender discrimination, the Equal Pay Act, and the Americans with Disabilities Act. Plaintiff also claimed that Defendant Cyclone was guilty of constructive discharge, retaliatory discharge, intentional infliction of emotional distress, and breach of contract. Against Defendant ESD, Plaintiff sought a petition for a writ of certiorari "pursuant to S.C.R.A. 1-075 and 1-077 of the New Mexico Rules of Civil Procedure." Id. ¶ 126. To bring her petition for certiorari in this court, Plaintiff invoked the principles of federal supplemental jurisdiction contained in 28 U.S.C. § 1367.

On June 24, 1999 ESD served Plaintiff with a Motion to Dismiss and a Motion for Stay of Discovery and Other Case Management Deadlines. Plaintiff did not respond. On July 22, 1999

---

[1] It is not clear from the complaint whether Plaintiff had in fact been filing certifications at that point.

ESD filed both motions with a letter to the court stating that Plaintiff had consented to the motions by failure to respond under D.N.M. LR-Civ. 7.3(a)(4). In her own letter to the court, counsel for Plaintiff alleged she had an agreement with counsel for Defendant ESD that Defendant ESD would withdraw its position that Plaintiff failed to timely respond and would extend Plaintiff's time to respond until August 2, 1999. ESD withdrew nothing and on July 29, 1999, Judge Svet granted ESD's Motion for Stay of Discovery until a ruling on ESD's Motion to Dismiss is entered. On August 2, 1999 Plaintiff responded to both of ESD's motions, (in spite of knowing that Judge Svet had already ruled against her on the Motion for Stay of Discovery.) ESD claims it did not receive the responses until August 24, and on August 26, 1999 filed its reply to the Motion to Dismiss.

Defendant ESD, in its Motion to Dismiss, asserted that Plaintiff's claims are barred by the Eleventh Amendment and the Rooker-Feldman doctrine, and that Plaintiff could not invoke supplemental jurisdiction over the claim against it. Plaintiff argued that supplemental jurisdiction was proper, but if not, asked that the claim against ESD be dismissed without prejudice so that it could be brought in state court.

Defendant ESD's Motion to Dismiss did not address the timeliness of Plaintiff's petition. In an October 15, 1999 letter, I therefore asked the parties to address in letters to me the issue of timely filing. On November 1, 1999, after reviewing the letters, I instructed the parties to file cross-briefs on whether the thirty day statutory time requirement is a statute of limitations and thus subject to waiver or whether it is a matter of jurisdiction and thus not waiveable.

**II.     Discussion**

In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a

claim, the court must liberally construe the pleadings, accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Thus, all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. See Swanson, 750 F.2d at 813.

A federal district court can raise the question of subject matter jurisdiction *sua sponte* any time. See Fed. R. Civ. P. 12(h)(3); United States v. Lugo, 170 F.3d 996, 1002 (10th Cir. 1999). In fact, a district court should "satisfy itself of subject-matter jurisdiction before proceeding to the merits of a claim." See Gold v. Local 7 United Food and Commercial Workers Union, 159 F.3d 1307, 1309-10 (10th Cir. 1998).

The issues relating to subject matter jurisdiction are significant. Defendant ESD argues in its motion to dismiss that this court lacks supplemental jurisdiction over it. The exercise of supplemental jurisdiction is appropriate where the claims without an independent basis for federal jurisdiction are "so related to claims in the action within such original jurisdiction that they form the part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

An initial question, raised by Defendant ESD, is whether Plaintiff properly may invoke the supplemental jurisdiction statute with respect to ESD, a co-defendant against whom no claims having an independent basis for federal jurisdiction are sought. ESD claims, in effect, that Plaintiff cannot assert pendent-party jurisdiction over it. ESD's argument was formerly correct

immediately following <u>Finley v. United States</u>, 490 U.S. 545, 554-56 (1989) in which the Supreme Court held that the plaintiff could not sue a defendant against whom she had only state law claims pendent to her federal claims against another defendant. However, the last sentence of section 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties"), added by the Judicial Improvements Act of 1990, overruled <u>Finley</u>. See <u>In re Secretary of Crime Control and Pub. Safety</u>, 7 F.3d 1140, 1144 n. 2 (4th Cir. 1993); <u>Schrag v. Dinges</u>, 820 F. Supp. 565, 568 n. 3 (D. Kan. 1993). Thus, supplemental jurisdiction is not improper against Defendant ESD merely because it is a non-diverse party against whom no federal claims are made.

The next question is whether the claim against Defendant ESD is "so related" to the federal claims against Defendant Cyclone that it forms "part of the same case or controversy." 28 U.S.C. § 1367(a). ESD relies on <u>Lyon v. Whisman</u>, 45 F.3d 758, 761 (3d Cir. 1996) as summarized in <u>In re Prudential Ins. Co. of America Sales Litigation</u>, 148 F.3d 283, 302 (3d Cir. 1998) to state that there is no "common nucleus of operative fact" between the claims against the two Defendants. See <u>Prudential</u>, 148 F.3d at 302 n. 30. Defendant ESD argues that, at least as to Plaintiff's Equal Pay Act and Title VII claims, the operative facts differ from those related to the denial of her unemployment benefits.

Plaintiff concedes that there may be no common nucleus of operative fact with respect to the Equal Pay Act claim and the Department of Labor's denial of unemployment compensation. On the other hand, Plaintiff argues that whether she was a "no-show/no-call" or whether she was constructively discharged is "a critical background fact common to both claims." Plaintiff's Response at 9. Further, Plaintiff adds that her request for relief under the ADA and her request

7

for unemployment compensation are, in essence, alternative theories of recovery for the same conduct. She relies on Gold, 159 F.3d. at 1310 (announcing but not applying the same standard discussed in Prudential, dismissing state claims for lack of supplemental jurisdiction without prejudice so that plaintiff could refile in state court).

Plaintiff alleges four claims "within such original jurisdiction" of this court, that is, four federal claims to which she could append supplemental claims. 28 U.S.C. § 1367(a). First, Plaintiff makes a gender discrimination claim under Title VII. The basis for this allegation (that a male former co-worker earned a higher wage) has nothing in common with Plaintiff's claim for unemployment compensation. Similarly, but by her own admission, Plaintiff's Equal Pay Act claim has no common nucleus of operative fact with her claim against Defendant ESD. Her third and fourth federal claims against Defendant Cyclone are for violations of the ADA (alleging Defendant Cyclone's failure to accommodate her disabling aversion to cold) and for constructive discharge (alleging that Defendant Cyclone wrongfully suspended her, pressured her to resign, and reassigned her without accommodation to a work site which would aggravate her disability).[2]

Plaintiff's ADA and constructive discharge claims share a common nucleus of fact with that upon which the Department of Labor based its decision denying unemployment benefits to Plaintiff, which Plaintiff asks that I review. The Department of Labor Appeals Bureau stated that Plaintiff did not document her medical condition and that she did not request accommodation at her new job site. The Appeals Bureau also found that she left work voluntarily, without good

---

[2] While Plaintiff does not make explicit the legal basis for her constructive discharge allegation, when drawing all reasonable inferences in Plaintiff's favor, I will assume for purposes of Defendant ESD's Motion to Dismiss that Plaintiff brings her constructive discharge claim under Title VII.

8

cause. These facts and findings directly relate to the facts that underlie her federal ADA claim and constructive discharge claim. The claims have more of a nexus than simply a common employer/employee relationship. See Prudential, 148 F.3d at 302 (citing Lyon, finding no common link between conduct underlying federal claim based on failure to pay overtime wages and state claim alleging failure to pay bonuses). In this case, therefore, the claims at issue stem from one set of operative facts and form part of the same case or controversy.

Even if, as in this case, the prerequisites of 28 U.S.C. 1367(a) are met, supplemental jurisdiction may not be appropriate. Subsection (c)(1) provides an exception for the exercise of supplemental jurisdiction where, for example, "the claim raises a novel or complex issue of state law." Subsection(c)(4) indicates that declining to exercise jurisdiction is proper "in exceptional circumstances" where there are "compelling reasons" for not doing so. Plaintiff's claim against Defendant ESD raises additional jurisdictional questions that are both novel and complex, the resolution of which depend wholly on state law. Plaintiff's claim against Defendant ESD also presents reasons for not extending supplemental jurisdiction that are exceptional and compelling. Accordingly, I decline to exercise federal supplemental jurisdiction.

> New Mexico's Unemployment Compensation Law states that
>
> The final decision of the secretary or board of review . . . may by reviewed . . . by the district court of the county wherein the person seeking the review resides upon certiorari . . . . Certiorari shall not be granted unless applied for within thirty days from the date of the final decision of the secretary or board of review.

N.M. Stat. Ann. § 58-1-8(N) (Repl. Pamp. 1998). The New Mexico Rules of Civil Procedure for the District Courts, in the rule governing appeals under the Unemployment Compensation Law, state that "[a]n appeal in the form of a petition for writ of certiorari pursuant to this rule shall be

9

filed in the district court within thirty (30) days from the date of the final decision of the secretary or board or review." Rule 1-077(C).

When asked to address the applicability of these provisions to this case, Plaintiff responded as follows: Section 58-1-8(N) is a statute of limitations and not a jurisdictional prerequisite because it does not explicitly proscribe a time period in which a claim must be filed.[3] As such, it is an affirmative defense which ESD may have waived by failing to assert it in its motion to dismiss. Even if ESD did raise it as a defense, the equitable principle of laches as applied in Zamora v. Village or Ruidoso Downs, 120 N.M. 778, 907 P.2d 182 (1995) dictates the outcome. Alternatively, section 58-1-8(N) should not apply because it violates the New Mexico Constitution to the extent it purports to prescribe procedure in the state district courts.

Although Defendant ESD did question the timing of Plaintiff's petition for certiorari, Defendant ESD did not expressly claim that it preserved an affirmative statute of limitations defense. Instead, in response to the queries on the applicability of the statutory and procedural provisions, Defendant ESD argued that the thirty day periods set forth in the statute and court rules are jurisdictional and thus cannot be waived.

Neither party cited to Jueng v. New Mexico Dep't of Labor, 121 N.M. 237, 910 P.2d 313 (1996). In Jueng, the Department of Labor issued a final administrative decision from which the plaintiff appealed by timely filing a petition for certiorari in the state district court on October 3, 1994. Id. at 238, 910 P.d at 314. On November 18, 1994 plaintiff served a copy of the petition on the defendants. N.M.S.A § 51-1-8(M) states that all parties shall be served with a copy of the

---

[3] Plaintiff crafted a detailed argument explaining why the statute at issue should be construed as a statute of limitations. She did not include Rule 1-077 in her analysis and instead asserted without support that Rule 1-077 creates a waiveable limitation.

10

petition within thirty days from the date of filing. The defendants argued that the plaintiff's failure to comply with the statutory time period for service, after a timely filing, divested the district court of subject matter jurisdiction. See Jueng, 121 N.M. at 238, 910 P.d at 314. The state supreme court rejected that argument, clarifying that timely filing is jurisdictional but service is not.

> Subsections 51-1-8(M) and (N) . . . provide a clear distinction between the requirements of jurisdiction and service. The legislature separated Section 51-1-8 into lettered paragraphs, dividing the requirements to invoke a court's jurisdiction and the requirements to properly serve a party into two different subsections. Subsection 51-1-8(M) defines who shall be a party in a judicial appeal and how they shall be served, whereas the provisions of Subsection 51-1-8(N) provide the steps to be taken before a court has jurisdiction to hear the appeal. There is no nexus or bridge between these subsections; the two subsections fulfill different functions and include no cross-references. On the basis of the structure and wording of these provisions, we conclude that the legislature intended Subsection (M) to govern notification of the parties and for Subsection (N) to specify the prerequisites to the district court's jurisdiction. We therefore conclude that strict compliance with the service requirements is not a precondition to jurisdiction over the appeal.

Id. Thus, whether Defendant ESD waived any statute of limitations defense is not an issue because as to the time for filing the statute is jurisdictional in no uncertain terms. Therefore I would ordinarily apply it *sua sponte*. Several reasons prevent me from doing so.

Plaintiff has asked me to find that section 51-1-8(N) violates the separation of powers doctrine contained in the New Mexico Constitution at Article III, Section 1, and that it usurps the New Mexico state courts' power to issue writs of certiorari found in Article VI, Sections 3 and 13. These questions are novel, in that they have not been litigated in Jueng or in any other New Mexico case. These state constitutional questions are also complex. For example, whether a jurisdictional statute violates the New Mexico Constitution merits a thorough, thoughtful review by a court primarily vested with that authority, that is, by a New Mexico state court. Similarly, an

analysis applying the New Mexico Constitution to a state statute directly affecting the jurisdiction of New Mexico state courts could be complex in effect and should not normally be within the purview of a federal judge.

Zamora and Rule 1-077 add further novelty and complexity. Zamora applied laches to determine the timeliness of a petition for certiorari for district court review of a municipal body's final administrative decision to fire the plaintiff. See Zamora, 120 N.M. at 785, 907 P.2d at 189. Plaintiff urges that I apply Zamora instead of section 58-1-8(N). But New Mexico courts have not indicated whether Zamora should apply in the unemployment compensation context or whether it should apply in the presence of a rule of civil procedure (enacted immediately following Zamora) and a statute (existing before Zamora) purporting to address certiorari review. It seems inappropriate for a federal district judge to determine, in the absence of a New Mexico decision on point, which of Zamora, Rule 1-077, or section 51-1-8(N) should control the outcome.

In this case there also exist exceptional circumstances compelling me not to exercise supplemental jurisdiction. Plaintiff asks that I find section 51-1-8(N) unconstitutional, but makes no such request with respect to Rule 1-077. If I found the state statute to be contrary to the New Mexico Constitution, Plaintiff would ask that I ignore state Rule 1-077. While declining to apply a state rule of civil procedure may be an appropriate exercise for a federal court considering federal and state questions according to federal rules of procedure, it could in this case lead to an inequitable result by implicitly approving an absurd example of forum shopping. A plaintiff in federal court should not be able to assert a state law claim against a non-diverse defendant under the guise of federal supplemental jurisdiction when that same claim would likely be barred as untimely in state court under a state rule of civil procedure. In sum, the exercise of supplemental

jurisdiction over ESD is inappropriate in this case.

IT IS THEREFORE ORDERED THAT Defendant ESD's Motion to Dismiss (Doc. No. 8) is GRANTED and Plaintiff's claim against ESD is dismissed without prejudice.

_____
**UNITED STATES DISTRICT JUDGE**